UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARY ELIZABETH SNEED,

    Plaintiff,

v.                                        Case No:   6:13-cv-1453-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## ORDER

Plaintiff Mary Elizabeth Sneed brings this action pursuant to the Social Security Act ("Act"), as amended 42 U.S.C. §§ 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").   Plaintiff argues that the administrative law judge ("ALJ") erred by: (1) failing to adequately consider the medical evidence that supports Plaintiff's claims about her limitations; (2) failing to present a hypothetical to the vocational expert that included all of Plaintiff's limitations; and (3) failing to provide sufficiently specific reasons for finding Plaintiff less than fully credible (Doc. 24).   Based upon a review of the administrative record and the pleadings and memoranda submitted by the parties, and for the reasons that follow, the Commissioner's final decision will be reversed and remanded for further proceedings consistent with the findings in this Order pursuant to sentence four of 42 U.S.C. § 405(g).

## I. Background

Plaintiff, a former real estate and jewelry store clerk with a high school education

and one year of college, protectively filed an application for DIB on April 11, 2011[1]

(Tr. 76, 91, 237-38).  Her application was denied initially and on reconsideration, and she

requested a hearing which was held on October 17, 2012 (Tr. 76, 87-109, 139-43, 148-

52).  On March 7, 2012, the ALJ issued her decision denying Plaintiff's application for

benefits (Tr. 23-32).

The ALJ employed the five step sequential evaluation process which appears at 20

C.F.R. § 404.1520 to evaluate Plaintiff's claim.[2]  At step one, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since her alleged onset date (Tr. 78)  At

step two, the ALJ concluded that Plaintiff was severely impaired by cervical spine

syndrome, thoracic spine syndrome, lumbar spine syndrome, asthma, and corneal

scarring (Tr. 78-79).  At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or equaled a listed impairment

(Tr. 79).

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

perform sedentary work subject to the following limitations: she must be afforded the

opportunity to alternate positions from sitting to standing every hour for 5 minutes while

working; she cannot climb ladders, ropes, or scaffolds, work at heights or with dangerous

machinery; she cannot crawl, reach overhead with her left arm; she cannot engage in

---

[1] Plaintiff also filed an application for Supplemental Security Income ("SSI") that was denied at the initial phase because her household's income was too high (Tr. 129-38).  Plaintiff did not seek reconsideration of the denial of her SSI claim.
[2] The five steps are summarized as follows:
   1. Is the claimant performing substantial gainful activity?
   2. Does the claimant have a severe impairment?
   3. Does the claimant have a severe impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
   4. Can the claimant perform past relevant work?
   5. Based on the claimant's age, education, and work experience, can the claimant perform other work of the sort found in the national economy?

constant handling, fingering, or feeling with her left hand; she can only occasionally stoop, crouch, kneel, or climb stairs with the use of a hand rail; and she must avoid excessive vibration (Tr. 79-81).  Based on Plaintiff's RFC, the ALJ decided at step four that Plaintiff could perform her past relevant work as a real estate clerk (Tr. 30).  Based on these findings, the ALJ decided that Plaintiff was not disabled (Tr. 32).  After the ALJ denied benefits, Plaintiff sought review by the Appeals Council (Tr. 70-72).  The Appeals Council denied the request for review (Tr. 1-4), and this appeal followed.

## II. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  Crawford v. Commissioner, 363 F.3d 1155, 1158 (11th Cir. 2004).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  Winschel v. Commissioner, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]"  Id.  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v.

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

There is a presumption in favor of the ALJ's findings of fact, but the presumption does not attach to the ALJ's conclusions of law. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). The Court will reverse a final decision if the ALJ incorrectly applies the law or fails to provide sufficient reasoning for the Court to determine whether the ALJ properly applied the law. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1992). When it reviews the Commissioner's final decision, the Court is authorized to "enter ... a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

### III. Discussion

In evaluating a claimant's RFC, the ALJ must weigh the opinions and findings of the medical sources including the treating, examining, and non-examining physicians and psychologists. The ALJ must consider all relevant factors in determining the weight to afford to each medical source opinion, including the nature and duration of the relationship between the provider and the patient, any evidence the source presents in support of the opinion, the opinion's consistency with the record, and the provider's specialty. 28 C.F.R. § 404.1527(c). An "opinion" is any statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnoses, and prognoses, what the claimant can still do despite his or her impairments, and the claimant's physical or mental restrictions. Winschel, 631 F.3d at 1178-79; 20 C.F.R. § 404.1527(a)(2). When confronted with a medical source opinion, the ALJ must state with particularity the weight given to the opinion and the reasons therefor. Id. (citing 20 CFR. § 404.1527(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)).

The ALJ must include this information in her decision so that reviewing courts can "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1178-79 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

The Commissioner sent Plaintiff to Dr. Donald Tindall, M.D., for a consultative examination on June 13, 2011 (Tr. 469-72). In his report Dr. Tindall describes Plaintiff's medical history, including injuries she sustained as a result of a December 2008 accident, his observations of Plaintiff, and the results of his physical examination (Tr. 469-71). During the examination Plaintiff told Dr. Tindall she could drive for 5-10 minutes at a time and that she was "independent for activities of daily living." (Tr. 470). Dr. Tindall noted that Plaintiff walked slowly but with no antalgic gait, and that she alternated between sitting and standing every five minutes (Tr. 470). Under the heading "Diagnoses, Summary, and Conclusion," Dr. Tindall wrote:

> Ms. Sneed has chronic low back and radicular pain, most likely multifactorial, including L4-5 left sided posterior disk protrusion, L4-5 bilateral facet arthrosis, and L5-S1 degenerative disk disease with chronic anterior disk protrusion with inferior left foraminal extrusion narrowing the neuroforamen with possible encroachment on the exiting left L5 nerve root and possible left S1 nerve root irritation.
>
> Ms. Sneed has chronic neck and radicular pain consistent with a C3-4 disk protrusion with left C3-4 radiculopathy and chronic cervical strain/sprain.
>
> Ms. Sneed is status post comminuted fracture of the left humeral head. She has left shoulder pain consistent with rotator cuff tendonitis/bursitis, bicipital tendonitis and possibly rotator cuff tear and/or post traumatic arthritis.
>
> Ms. Sneed is moderately anxious. If so indicated, psychological evaluation is recommended.
>
> Ms. Sneed has objective findings consistent with her subjective complaints.

(Tr. 471-72).

Plaintiff saw Dr. Tindall again on September 27, 2012 (Tr. 484-87).  The doctor's report of this examination largely mirrors his June 2011 report, although he did note that Plaintiff reported occasionally needing assistance with bathing and dressing (Tr. 485). Dr. Tindall also noted that Plaintiff's gait was "mildly antalgic to the left" and that she "[w]alks and stands with back held stiffly."  (Tr. 485).  As she had the previous June, during the examination Plaintiff alternated between sitting and standing every five minutes (Tr. 485).  Under "Diagnoses, Summary, and Conclusion," Dr. Tindall repeated (with minor differences) the first four paragraphs from his June 2011 report, and then concluded, "See Medical Source Statement Of Ability To Do Work Related Activities." (Tr. 487).  In the Medical Source Statement, which is also dated September 27, 2012, Dr. Tindall reported that Plaintiff can only lift less than 10 lbs. occasionally or frequently; she can sit for less than two hours in an eight hour work day (with normal breaks); she can stand or walk for less than two hours in an eight hour work day (with normal breaks); and she must be allowed to periodically alternate sitting and standing to relieve pain or discomfort (Tr. 481-82).  In support of these findings, Dr. Tindall pointed to "(1) multifactorial chronic lower back and radicular pain; (2) chronic neck and radicular pain 2° C3-4 [illegible] protrusion with left C4-4 radiculopathy; [and] (3) chronic left shoulder pain."  (Tr. 482).  He said Plaintiff was incapable of climbing, balancing, kneeling, crouching, or crawling and that her ability to reach in all directions is limited (Id.).  But, he found that Plaintiff's ability to handle (gross manipulation), finger (fine manipulation), and feel (skin receptors) was unlimited (Id.).  Dr. Tindall also said Plaintiff had no limitations in seeing, hearing, or speaking (Tr. 483).  But, he found that Plaintiff could not tolerate exposure to temperature extremes, humidity or wetness, excessive vibration or noise,

dust, odors, or fumes (Id.).    Dr. Tindall concluded his medical source statement by saying that although Plaintiff had complied with treatment, her prognosis is "poor" and she is not expected to improve (Id.).

The ALJ summarized Dr. Tindall's reports and noted his conclusions (Tr. 81). However, the ALJ gave "Dr. Tindall's opinion little weight because it is inconsistent with the findings in the treatment record through 2010, reflecting full strength and sensation and normal gait."   (Id.).    The ALJ also "considered Dr. Tindall's findings regarding a slight degrees [sic–decrease?] of left grip strength and slight gait abnormality, but these are not reasonably associated with the degree of limitation he assessed and with treatment record [sic]."    (Id.).    The ALJ gave greater weight "to the opinions of State agency medical consultant [sic], who found the claimant's impairments are severe but she is capable of work at the light level of physical demand with occasional postural and some environmental restrictions (Exhibits 4A), as more consistent with the record."    (Id.).

The ALJ failed to explain how Dr. Tindall's findings were "inconsistent with the findings in the treatment record through 2010, reflecting full strength and sensation and normal gait."    Dr. Tindall did not attribute Plaintiff's functional limitations to neuromuscular strength deficits, but to pain caused by her back problems (Tr. 482).  A finding of "5/5" or normal strength on physical examination simply means a person can maintain muscle contraction against normal resistance.    Davoodianes v. Astrue, No. CV 11-5262-AGR, 2012 WL 2373431, at *4 (C.D. Cal. 2012); see also Hipkins v. Barnhart, 305 F. Supp. 2d 394, 396 n. 1 (D. Del. 2004) (citing The Merck Manual of Diagnosis and Therapy, § 14, at 1347 (17th ed. 1999)) (summarizing motor strength scale).   It says nothing about how long a person can maintain a particular level of effort over an eight-hour work day.   It is also important to note that both of Dr. Tindall's examinations showed

"give-way" weakness in the left shoulder and hip "secondary to pain."  (Tr. 470-71, 485). "Give-way" weakness in strength testing refers to a sudden decrease in effort during testing, which may prevent the examiner from assessing the true strength of a muscle. See Katirji, Kaminski & Ruff, Neuromuscular Disorders in Clinical Practice 5 (rev'd ed. 2013).  Give-way weakness may result from pain, malingering, or conversion disorder (a psychiatric disorder).  Id.  Dr. Tindall did not indicate that Plaintiff had full strength in these muscles (Id.).  In short, there is nothing inconsistent between Dr. Tindall's assessment and his objective findings on examination or findings by the other medical sources of full strength in 2009 and 2010.  And, the fact that a patient has normal gait says little, if anything, about whether the patient is capable of performing sedentary (i.e., seated) work with only five minute breaks every hour to stand.[3]

Sensation has even less to do with the limitations Dr. Tindall identified.  Limited sensation may impact a person's capacity for feeling objects, but Dr. Tindall found that Plaintiff had no limitations in that area.  Thus, findings by Dr. Tindall and other medical sources that Plaintiff has full sensation support and confirm Dr. Tindall's opinion.

The ALJ's poorly-explained rejection of Dr. Tindall's opinions is also troubling in light of her cursory, paragraph-long summary of Plaintiff's treatment records.  The ALJ summarized over 180 pages of treatment notes in the following paragraph:

> A review of the record shows the claimant was a pedestrian
> when she was struck by a vehicle's side mirror on the left side
> on December 23, 2008. She subsequently sought treatment
> for back neck and extremity symptoms through May 2010.
> There is imaging supporting degenerative disc disease of the
> back and neck and left shoulder impairment, with some
> evidence of cervical radiculitis on testing (Exhibits 4F and 6F).
> However, objective physical findings in 2010 report full

---

[3] Plaintiff testified at the hearing that standing is easier for her than sitting (Tr. 97).  This testimony is consistent with the reports in her medical records (Tr. 330, 347, 355, 368, 377, 412).

> strength and sensation in the upper and lower extremities, 5/5 grip and normal gait (Exhibit 6F and 7F). Further, the claimant has had no surgery and no medical treatment since 2010, and she is not on any pain medication other than Tylenol. Although the claimant has reported financial concerns preclude treatment, the record does not document any attempts to obtain low cost public treatment or emergency room treatment. The complete absence of treatment does not lend support to a disabling level of symptoms.

(Tr. 80).

While the ALJ is not required to cite every piece of evidence in the record, Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005), this case warranted a more thorough discussion. For example, although the ALJ faulted Plaintiff for not having surgery or obtaining any medical treatment since 2010, the record shows that not one but two doctors recommended back surgery (Tr. 435, 446, 450, 467). The ALJ acknowledged that Plaintiff did not follow through with surgery because of financial issues, but discredited Plaintiff's testimony about her symptoms in part because she did not seek treatment from a free clinic or an emergency room. It was improper for the ALJ to use Plaintiff's failure to seek treatment from a free clinic or emergency room against her without giving her the opportunity to explain why she did not pursue these options. See Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T[he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"). The ALJ's silence regarding the two doctors' recommendations that Plaintiff undergo back surgery makes this flawed credibility assessment even more problematic.

- 9 -

The records also contain evidence that is highly relevant to Plaintiff's functional limitations. For example, Plaintiff reported to her chiropractor on March 16, 2009 that she "can sit longer through church than she has been able to," and on March 30, 2009 that she was able to sit through a whole church service without having to get up (Tr. 368, 412). This evidence could be interpreted to support a denial (Plaintiff sat through church service, so she can do sedentary work) or award (the fact that Plaintiff sat through one church service with difficulty does not mean she can sit through an eight hour work day with only hourly breaks) of benefits. But aside from a single sentence about objective imaging, the ALJ never discussed this or any other evidence from the 100 pages of treatment notes from Orlando Neck and Back Center.

The ALJ also completely ignored statements from Plaintiff's chiropractor, state agency physicians, and Dr. Tindall that the objective evidence substantiated Plaintiff's complaints of symptoms. Dr. Ty Trudeau, Plaintiff's chiropractor, repeatedly said Plaintiff's "subjective complaints and objective findings are consistent." (Tr. 334, 350, 371, 395, 415). Dr. Tindall made the same finding in his June 2011 report (Tr. 472). And the state agency physicians who examined Plaintiff's records at the initial and reconsideration level both concluded that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were "substantiated by the objective medical evidence alone."[4] (Tr. 114-15, 124). If objective medical evidence by itself supports the claimant's allegations about the intensity and persistence of subjective symptoms, the ALJ must accept those allegations as true. SSR 96-7p, 1996 WL 374186, at *1.

---

[4] The state agency physicians did not indicate that Plaintiff would require a sit-stand option, but there is no obvious place on the Disability Determination Information form for such a restriction.

- 10 -

To be sure, Plaintiff's allegations regarding the severity of her symptoms and limitations changed over time, so the fact that her statements from 2011 were substantiated by objective evidence does not mean that the same is true about her statements in 2012. But during 2009, Plaintiff typically reported to Dr. Trudeau that she was able to stand or sit for no more than half an hour due to her pain (Tr. 339, 341, 401, 402, 417). At one visit–the same visit at which she reported that she managed to sit through a church service–she said she could sit and stand for up to an hour (Tr. 376-77). All of these statements were made before Plaintiff applied for Social Security benefits. Additionally, in a pain report dated May 20, 2011, before Dr. Tindall or either state agency physician offered an opinion, Plaintiff said she could sit, stand, or walk no longer than 15 minutes in a row due to pain in her lower back that radiated down into her leg (Tr. 260). And, Dr. Tindall noted at both examinations that Plaintiff was alternating between sitting and standing every five minutes (Tr. 470, 485).

Despite the fact that three doctors opined that the objective evidence supported Plaintiff's statements at least from 2011 regarding her symptoms and limitations, including her inability to sit or stand for more than half an hour, the ALJ found that Plaintiff could work in a sitting position for up to six hours per day if she was allowed to change to a standing position for five minutes *once per hour* (Tr. 79). The ALJ could only reach this conclusion by disagreeing with Dr. Trudeau, Dr. Tindall and the state agency physicians about what the objective evidence, including reports of several MRI scans and a nerve conduction test, show. An ALJ who rejects three physicians' and one treating chiropractor's interpretations of technical medical evidence without (at least) providing a good reason for doing so commits error. The ALJ may not "play doctor" by substituting her own uninformed medical evaluations" for that of a medical professional. Marbury v.

Sullivan, 957 F.2d 837, 841 (11th Cir. 1992) (Johnson, J., concurring); see also Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). While the line between appropriately finding facts and inappropriately "playing doctor" is not always clear, Whisby v. Colvin, No. 5:13-CV-360(MTT), 2015 WL 150188, at *3 (M.D. Ga. Jan. 12, 2015) (citing Castle v. Colvin, 557 Fed. Appx. 849, 852-54 (11th Cir. 2014)), the apparent reinterpretation of highly technical MRI imaging reports clearly falls on the impermissible side of the line.[5]

Lastly, the ALJ's error directly impacted the result in the case. The vocational expert testified that if someone with Plaintiff's limitations also had to alternate between sitting and standing at least once every thirty (or fewer) minutes that would "eliminate all work." (Tr. 107).

### IV. Conclusion

Based upon these findings it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED and REMANDED** for further proceedings consistent with the findings in this Order.

2. The Clerk is directed to enter judgment and **CLOSE** the file.

---

[5] See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (holding that "[a]s a layperson, ... the ALJ was simply not qualified to interpret raw medical data" contained in the claimant's MRI "in functional terms" without a medical opinion supporting the interpretation); Hendrickson v. Colvin, No. 1:13-cv-2384, 2014 WL 6982640, at *9 (M.D. Pa. Dec. 10, 2014) ("[N]o doctor or any individual with medical training concluded that Plaintiff's objective findings [or test results] were 'normal' or 'mild.' Consequently, in order to characterize the objective evidence as 'mild,' the ALJ engaged in impermissible lay interpretation of medical evidence."); Ancona v. Astrue, Civ. No. 09-cv-07164-WYD, 2010 WL 3874196, at *3 (D. Colo. Sept. 29, 2010) ("To the extent that the ALJ interpreted these x-ray/imaging test results to support her finding that there was little objective evidence to support Dr. Campbell's opinion..., this was an improper lay judgment of the ALJ. The ALJ is not trained to read x-ray and other medical test results, and certainly cannot substitute her judgment about results from such tests for that of Dr. Campbell, an orthopedic specialist."); Roso v. Commissioner, No. 5:09CV198, 2010 WL 1254831, at *8 (N.D. Ohio Mar. 11, 2010) ("The ALJ and Appeals Council improperly substituted their own interpretation of the MRIs and CAT scans for those of a medical professional of record."); Casstevens v. Astrue, No. 1:07CV657, 2009 WL 1383313, at *4 (M.D.N.C. May 14, 2009).

3. Plaintiff is advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after he receives notice from the Social Security Administration of the amount of past due benefits awarded.

4. Upon receipt of such notice, Plaintiff shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

**DONE** and **ORDERED** in Orlando, Florida on March 19, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record